UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY W. LUCAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:06-cv-0677-DFH-WTL |
| | ) |
| TIG INSURANCE COMPANY, | ) |
| K&K INSURANCE GROUP, INC., | ) |
| CONTINENTAL CASUALTY COMPANY, | ) |
| AND SPECIALTY BENEFITS, INC., | ) |
| | ) |
| Defendants. | ) |

ENTRY ON MOTION TO REMAND TO STATE COURT

Plaintiff Anthony W. Lucas, an Arkansas citizen for federal jurisdictional purposes, sued defendants TIG Insurance Company ("TIG"), K&K Insurance Group ("K&K"), Continental Casualty Company ("CCC"), and Specialty Benefits, Inc. ("SBI") in an Indiana sate court. Defendants removed the case to federal court on the basis of diversity of citizenship. This court entered an Order to Show Cause, ordering the defendants to explain why this action should not be remanded to state court. The court noted that according to the Notice of Removal, two of the removing defendants (K&K and SBI) are citizens of Indiana, and 28 U.S.C. § 1441(b) provides that a defendant may not remove based on diversity jurisdiction if the defendant is a citizen of the forum state. The defendants' response contends that Lucas fraudulently joined K&K and SBI in this action. Lucas has moved to remand the action to state court. As explained below, the

motion to remand the action is granted because the defendants have not shown fraudulent joinder of K&K and SBI.

*Background*

Lucas alleges the following in his complaint. Lucas was a football player at the University of Arkansas when Jim Padilla, an insurance agent employed by K&K Insurance Group, Inc., contacted him about purchasing a disability insurance policy. Compl. ¶ 7. Padilla eventually gave Lucas an application for the insurance coverage with TIG Insurance Company. *Id.* ¶ 8. Lucas answered the questions openly and honestly. *Id.* ¶ 9. He also executed a medical authorization form, which would give the defendants complete access to his medical record. *Id.* ¶ 10. TIG issued a policy of disability insurance to Lucas on April 26, 1999. *Id.* ¶ 12.

This policy was modified twice after its delivery to Lucas. On that same day, an endorsement was executed, changing the policy expiration date from June 1, 2000 to August 1, 2000. *Id.* ¶ 13. And on April 16, 2000, about a year later, another endorsement was issued, increasing the insurance benefit amount to $1,000,000. *Id.* ¶ 14.

On June 6, 2000, about two months after joining the Green Bay Packers, Lucas injured his right knee. *Id.* ¶ 16. Lucas underwent surgery and rehabilitation. *Id.* ¶¶ 17-31. Complications arose, eventually leading to Lucas'

retirement from the NFL. *Id.* ¶¶ 32-33. Lucas submitted a notice of claim for disability benefits on November 19, 2003. *Id.* ¶ 34. The defendants denied the claim in writing, asserting that his coverage expired on June 1, 2000. *Id.* ¶ 35. Lucas forwarded to the defendants a copy of TIG's policy endorsement, which reflected the correct date – August 1, 2000. *Id.* ¶ 36. The defendants again, denied his claim, but this time the reason given was his response of "no" to question five, which asked if he had "been treated or been advised to seek treatment by a medical professional for gout, arthritis, rheumatism or any other disease or disorder of the back, spine, bones, or joints," on his application for insurance. *Id.* ¶ 37. The defendants stated that since Lucas previously had arthroscopic procedures done on his right knee, this was a material misrepresentation rendering the policy void from its inception. *Id.*

Lucas states that he reasonably interpreted the question to be asking if he suffered any congenital, developmental or contracted disease in the back, spine, bones or joints, which he did not; and that he did not think a procedure to repair the ligaments and tendons of the knee qualified as such. *Id.* ¶¶ 38-39. Lucas points to the fact that he answered question three, which asked if he had missed more than three consecutive games due to illness, with a "yes." *Id.* ¶ 40. In addition, he stated that he executed a medical authorization statement granting the defendants complete access to his medical records. *Id.* ¶ 41. Finally, Lucas alleges that he fully disclosed his medical history to Padilla at the time he submitted his application. *Id.*

Lucas alleges that the defendants denied his claim for the third time, because they said he had resumed the duties of his occupation for thirty consecutive days after the injury. *Id.* ¶42. Lucas alleges that this was factually incorrect and that he never resumed the duties of a professional football player after his accident. He alleges that the only time he participated was during team practice sessions, but that these were limited and restricted due to his injures. *Id.* ¶¶ 43-44.

Lucas claims he is entitled to the full benefit of $1,000,000 under his disability insurance policy, as well as "damages stemming from the Defendants bad faith failure to exercise the requisite care in investigating and evaluating his claim." *Id.* ¶¶ 46-47.

*Analysis*

The parties here are of diverse citizenships, and the amount in controversy exceeds $75,000. However, a case may be removed based on diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). K&K and SBI are both citizens of Indiana for purposes of diversity jurisdiction. Accordingly, removal of this case was proper only if K&K and SBI were fraudulently joined as defendants. The doctrine of "fraudulent joinder" is not particularly well-named, for it requires neither fraud nor joinder. *Mayes v. Rapoport*, 198 F.3d 457, 461 n.8 (4th Cir. 1999). "Fraudulent joinder occurs

either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or there has been an outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Elec. Corp., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994), quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Defendants make no suggestion of "outright fraud" in pleading facts relating to jurisdiction. Instead, defendants contend that plaintiff has failed to allege a viable cause of action against K&K and SBI.

The applicable standard is one of the most generous under the law. The issue is not whether the plaintiff is likely to prevail on the merits, or even whether the state courts are likely to adopt the plaintiff's view of the applicable law. The question is whether there is any reasonable possibility that a state court might rule against the Indiana defendants when all fairly disputable issues of both fact and law are resolved in the plaintiff's favor. See *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Thus, even if a state court might ultimately find that the plaintiff failed to state a claim against the defendants, joinder of K&K and SBI was not "fraudulent" for purposes of this court's jurisdiction so long as the issue of state law is subject to reasonable argument on both sides. See *Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 853 (3d Cir. 1992) (vacating dismissal of claims against non-diverse defendants and judgment in favor of diverse defendant, and ordering remand to state court; if "intricate analysis of state law" is needed

to dismiss claim, the claim may not be disregarded for purposes of diversity jurisdiction).

In this case the defendants claim that Lucas could never recover against K&K and SBI on the grounds alleged in the complaint. Because of the federal courts' limited jurisdiction and the presumption that a plaintiff is entitled to be the "master of his own ship" in the selection of a forum for his claims to be heard, the burden placed upon a defendant asserting fraudulent joinder is "heavy." *Poulos*, 959 F.2d at 73.

I.    *Failure to State a Claim?*

Defendants state "Lucas' sole theory of recovery against the Defendants is a claim for bad faith denial of insurance coverage." They argue that Lucas cannot state such a claim against K&K because there was no specific allegation that it participated in the decision to deny coverage. Defendants contend that a cause of action for bad faith against SBI cannot be established because it is a claims administrator and not an insurance company.

In *Murphy v. Guideone Mutual Ins. Co.*, 2004 WL 503800, *1 (S.D. Ind. Feb. 23, 2004), this court decided a similar case, holding that the insurance agency was not fraudulently joined and remanding the case to state court. In *Murphy*, the plaintiffs' home was destroyed by fire. *Id.* The plaintiffs' claim was was denied. In state court, the plaintiffs sued both the insurance company and

the independent insurance agency from whom they had bought the insurance, alleging that the denial was wrongful. The plaintiff's complaint alleged six counts, which were titled Breach of Contract, Negligence, Tortious Conduct, Bad Faith, RICO, and Crime Victim's Relief Act.

The defendants in *Murphy* removed to federal court based on diversity grounds, arguing that the non-diverse agency had been fraudulently joined as a defendant. *Id.* The plaintiffs moved to remand. The defendants argued that there was no viable claim against the agency because the contractual relationship was between the plaintiffs and the insurance company. The court rejected this argument. The court noted that Indiana law draws a line between independent insurance agents and employees or dedicated agents of an insurance company:

> An insurance agent representing several companies, sometimes referred to as a broker, is typically an agent of the insured while procuring a policy. The agent then typically becomes an agent of the insurer once the policy is in place. *Malone v. Basey*, 770 N.E.2d 846, 851 (Ind. App. 2002). A number of factors, however, may lead the courts to find that a broker's duty to an insured is greater than merely procuring insurance. *DeHayes Group v. Pretzels, Inc.*, 786 N.E.2d 779, 782 (Ind. App. 2003) (greater duty may apply where there is close, long-term relationship or other special circumstances; factors include (1) the broker's exercise of broad discretion in servicing the insured's needs; (2) the broker's counseling of the insured concerning specialized insurance coverage; (3) the broker's declaration that he is a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) the broker's receipt of compensation, above the customary premium paid, for expert advice provided). On the pleadings, the court could not say that TIS had no independent duty toward the Murphys.

*Id.* at *3. The court went on to conclude that the allegations of the complaint at the time of removal were sufficient to raise a possibility of recovery at least with

respect to two of the counts set forth in the original complaint. The court also noted that the bad faith count read: "Defendants breached their duty to act in good faith when dealing with the Murphys," which was not specific in time and was not limited to the processing of the claim and thus could apply to the application process. *Id.* at *4.

The same analysis applies here. Even though SBI is a claims administrator and did not directly handle Lucas' insurance policy, it might have had an independent duty toward him under Indiana law. The defendants argue that unlike the plaintiff in *Murphy* who included six counts in his complaint, Lucas included only one count – bad faith denial of coverage. They contend that he did not allege negligence. No specific allegations were needed. Except where otherwise provided, Indiana is a notice pleading state. *Wee Scots, LLC v. Fleming,* 765 N.E.2d 668, 671 (Ind. App. 2002). Thus, if the pleadings give rise to a negligence claim or any other viable claim, that would suffice.

The defendants argue there was no specific allegation that K&K handled Lucas' claim, but Lucas consistently referred to "the defendants" in his complaint. Since K&K is a defendant in this case, the allegations apply to it as well.

The question becomes whether the allegations of the complaint at the time of removal were sufficient to raise a possibility of recovery under Indiana law under any viable theory. Lucas alleges in his complaint that he disclosed his

entire medical history to Padilla at the time they prepared the application for insurance. If Padilla and thus K&K were deemed to be acting as plaintiff's agent at the time, plaintiff could have a viable claim against K&K for negligent breach of duty to use due care in preparing and submitting the application. Such a claim might be asserted in addition, and even in the alternative, to Lucas' principal claim against TIG Insurance. On the other hand, if Padilla and his employer were deemed to be acting on behalf of TIG insurance at the time, then providing information to Padilla and K&K could be deemed equivalent to providing information to TIG Insurance, which would tend to support a claim for bad faith denial of coverage against at least TIG and K&K. This court cannot say that there is no "possibility" or even no "reasonable possibility" that Indiana courts would find the Lucas complaint sufficient to assert a viable claim for recovery against the Indiana defendants. And if plaintiff has offered a potentially viable claim under any theory, including one that is an alternative to the thrust of the complaint, this court could not say that K&K has been fraudulently joined as a defendant.

In addition, as in *Murphy*, the pleadings are general. Lucas alleges that "The Defendants' denial of [his] claim for benefits is based on wrongful and erroneous assumptions asserted by the Defendants in a bad faith breach of the insurance policy. Compl. ¶ 46. He also alleges that his damages stem from "the Defendants' bad faith failure to exercise the requisite care in investigating and evaluating his claim." *Id.* ¶ 47. These allegations are general and include both the application process as well as the denial of benefits. Even if K&K's only

involvement with Lucas' disability insurance policy was in his procurement of it, the allegations are broad enough to encompass any time K&K was involved with Lucas' insurance policy.[1]

II.     *Attorney's Fees and Costs*

Plaintiff has requested an award of attorney fees under 28 U.S.C. § 1447(c), which allows a court remanding a case to order payment of costs and fees "incurred as a result of the removal." The Seventh Circuit had earlier adopted a presumption in favor of such awards. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000). The Supreme Court has adopted more recently a different standard in *Martin v. Franklin Capital Corp.*, 546 U.S.—, —, 126 S. Ct. 704 (2005), holding that courts may award fees under Section 1447(c) only when the removing party lacked an objectively reasonable basis for seeking removal. The original complaint here is ambiguous enough about the potential basis for any claim against the Indiana defendants that the court finds that defendants did not lack an objectively reasonable basis for removal. Plaintiff's request for attorney fees and costs is therefore denied.

---

[1] In his complaint, Lucas did not specify which defendant was involved at each stage of the process. It was only in his brief that he did so. This court's decision regarding remand however must be based on the complaint as it existed at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).

*Conclusion*

Accordingly, K&K and SBI have not been fraudulently joined, so the removal of the case was improper pursuant to 28 U.S.C. § 1441(b). Plaintiffs' Motion to Remand (Docket No. 16) is GRANTED. This case is hereby REMANDED to the Marion Circuit Court, each side to bear its own fees and costs.

So ordered.

Date:  August 15, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jeffrey Allen Hammond
WOODEN & MCLAUGHLIN LLP
jhammond@woodmaclaw.com

Robert L. McLaughlin
WOODEN & MCLAUGHLIN LLP
rmclaughlin@woodmaclaw.com

Verdelski V. Miller
verdelski@aol.com

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
mrabinowitch@woodmaclaw.com